

## General Staffing Agreement

JENNMAR Services, LLC with its principal office located at 160 Technology Drive, Canonsburg, PA 15317 ("STAFFING FIRM"), and <u>American Resources Corporation</u> with its principal office located at <u>12115 Visionary Way, Suite 174, Fishers, IN 456038</u> ("CLIENT") agree to the terms and conditions set forth in this Staffing Agreement (the "Agreement").

### STAFFING FIRM's Duties and Responsibilities
1. STAFFING FIRM will
   a. Recruit, screen, interview, and assign its employees ("Assigned Employees") to perform the type of work agreed upon by STAFFING FIRM and CLIENT under CLIENT's supervision at the locations specified by CLIENT;

   b. Pay Assigned Employees' wages and provide them with the benefits that STAFFING FIRM offers to them;

   c. Pay, withhold, and transmit payroll taxes; provide unemployment insurance and workers' compensation benefits; and handle unemployment and workers' compensation claims involving Assigned Employees;

### CLIENT's Duties and Responsibilities
2. CLIENT will
   a. Properly supervise Assigned Employees performing its work and be responsible for its business operations, products, services, and intellectual property;

   b. Properly supervise, control, and safeguard its premises, processes, or systems, and not permit Assigned Employees to operate any vehicle or mobile equipment, or entrust them with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without STAFFING FIRM's express prior written approval or as strictly required by the job description provided to STAFFING FIRM;

   c. Provide Assigned Employees with a safe work site and provide appropriate information, training, and safety equipment with respect to any hazardous substances or conditions to which they may be exposed at the work site;

   d. Not change Assigned Employees' job duties without STAFFING FIRM's express prior written approval; and

   e. Exclude Assigned Employees from CLIENT's benefit plans, policies, and practices, and not make any offer or promise relating to Assigned Employees' compensation or benefits.

**Exhibit 1**



### Payment Terms, Bill Rates, and Fees

3. CLIENT will pay STAFFING FIRM for its performance at the rates set forth on Exhibit A and will also pay any additional costs or fees set forth in this Agreement. STAFFING FIRM will invoice CLIENT for services provided under this Agreement on a weekly basis. Payment terms are net 10 days from invoice date. Invoices will be supported by the pertinent time sheets or other agreed system for documenting time worked by the Assigned Employees. CLIENT's signature or other agreed method of approval of the work time submitted for Assigned Employees certifies that the documented hours are correct and authorizes STAFFING FIRM to bill CLIENT for those hours. If a portion of any invoice is disputed, CLIENT will pay the undisputed portion.

4. Assigned Employees are presumed to be nonexempt from laws requiring premium pay for overtime, holiday work, or weekend work. STAFFING FIRM will charge CLIENT special rates for premium work time only when an Assigned Employee's work on assignment to CLIENT, viewed by itself, would legally require premium pay and CLIENT has authorized, directed, or allowed the Assigned Employee to work such premium work time. CLIENT's special billing rate for premium hours will be the same multiple of the regular billing rate as STAFFING FIRM is required to apply to the Assigned Employee's regular pay rate.

5. Assigned Employees will be placed with CLIENT and available to hire after 2080 hours of employment while on STAFFING FIRM's payroll. After the completion of the agreed upon hours CLIENT can hire STAFFING FIRM's employee at no cost to the CLIENT.

6. In addition to the bill rates specified in Exhibit A of this Agreement, CLIENT will pay STAFFING FIRM the amount of all new or increased labor costs associated with CLIENT's Assigned Employees that STAFFING FIRM is legally required to pay-such as wages, benefits, payroll taxes, social program contributions, or charges linked to benefit levels-until the parties agree on new bill rates.

### Confidential Information

7. Both parties may receive information that is proprietary to or confidential to the other party or its affiliated companies and their clients. Both parties agree to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purpose whatsoever other than performing under this Agreement or as required by law. No knowledge, possession, or use of CLIENT's confidential information will be imputed to STAFFING FIRM as a result of Assigned Employees' access to such information.

### Cooperation

8. The parties agree to cooperate fully and to provide assistance to the other party in the investigation and resolution of any complaints, claims, actions, or proceedings that may be brought by or that may involve Assigned Employees.

### Indemnification and Limitation of Liability

9. To the extent permitted by law, STAFFING FIRM will defend, indemnify, and hold CLIENT and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by STAFFING FIRM's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in paragraph 1; or the negligence, gross negligence, or willful misconduct of STAFFING FIRM or STAFFING FIRM's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

10. To the extent permitted by law, CLIENT will defend, indemnify, and hold STAFFING FIRM and its

**JENNMAR**
SERVICES

parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by CLIENT's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in paragraph 2; or the negligence, gross negligence, or willful misconduct of CLIENT or CLIENT's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

11. Neither party shall be liable for or be required to indemnify the other party for any incidental, consequential, exemplary, special, punitive, or lost profit damages that arise in connection with this Agreement, regardless of the form of action (whether in contract, tort, negligence, strict liability, or otherwise) and regardless of how characterized, even if such party has been advised of the possibility of such damages.

12. As a condition precedent to indemnification, the party seeking indemnification will inform the other party within 3 business days after it receives notice of any claim, loss, liability, or demand for which it seeks indemnification from the other party; and the party seeking indemnification will cooperate in the investigation and defense of any such matter.

13. The provisions in paragraphs 9 through 13 of this Agreement constitute the complete agreement between the parties with respect to indemnification, and each party waives its right to assert any common-law indemnification or contribution claim against the other party.

**Miscellaneous**

14. Provisions of this Agreement, which by their terms extend beyond the termination or nonrenewal of this Agreement, will remain effective after termination or nonrenewal.

15. No provision of this Agreement may be amended or waived unless agreed to in a writing signed by the parties.

16. Each provision of this Agreement will be considered severable, such that if any one provision or clause conflicts with existing or future applicable law or may not be given full effect because of such law, no other provision that can operate without the conflicting provision or clause will be affected.

17. This Agreement and the exhibits attached to it contain the entire understanding between the parties and supersede all prior agreements and understandings relating to the subject matter of the Agreement.

18. The provisions of this Agreement will inure to the benefit of and be binding on the parties and their respective representatives, successors, and assigns.

19. The failure of a party to enforce the provisions of this Agreement will not be a waiver of any provision or the right of such party thereafter to enforce each and every provision of this Agreement.

20. CLIENT will not transfer or assign this Agreement without STAFFING FIRM's written consent.

21. Any notice or other communication will be deemed to be properly given only when sent via the United States Postal Service or a nationally recognized courier, addressed as shown on the first page of this Agreement.

22. Neither party will be responsible for failure or delay in performance of this Agreement if the failure or delay is due to labor disputes, strikes, fire, riot, war, terrorism, acts of God, or any other causes beyond the control of the nonperforming party.

**Term of Agreement**

23. This Agreement will be for a term of 1 year(s) from the first date on which both parties have executed it. The Agreement may be terminated by either party upon 10 days written notice to the

# JENNMAR
### SERVICES

other party, except that, if a party becomes bankrupt or insolvent, discontinues operations, or fails to make any payments as required by the Agreement, either party may terminate the agreement upon written notice.

**Authorized representatives of the parties have executed this Agreement below to express the parties' agreement to its terms.**

| American Resources Corporation | JENNMAR Services, LLC |
|---|---|
| CLIENT | Staffing Firm |
| *[signature]* | *[signature]* |
| Signature | Signature |
| Printed Name | Printed Name |
| Thomas M. Sauve | Ryan D. Litwinovich |
| President | Vice President - Jennmar Services |
| Title | Title |
| 04/09/2021 | 4/15/21 |
| Date | Date |



**EXHIBIT "A"**

| EE Rate | Bill Rate | OT Rate | EE Rate | Bill Rate | OT Rate |
|---------|-----------|---------|---------|-----------|---------|
| $15.00 | $30.83 | $43.47 | $25.00 | $46.75 | $65.92 |
| $15.50 | $31.69 | $44.68 | $25.50 | $48.17 | $67.92 |
| $16.00 | $32.54 | $45.88 | $26.00 | $49.62 | $69.96 |
| $16.50 | $33.39 | $47.08 | $26.50 | $50.48 | $71.18 |
| $17.00 | $34.24 | $48.28 | $27.00 | $51.33 | $72.38 |
| $17.50 | $35.11 | $49.51 | $27.50 | $52.18 | $73.57 |
| $18.00 | $35.96 | $50.70 | $28.00 | $53.03 | $74.77 |
| $18.50 | $36.82 | $51.92 | $28.50 | $53.90 | $76.00 |
| $19.00 | $37.67 | $53.11 | $29.00 | $54.75 | $77.20 |
| $19.50 | $38.43 | $54.19 | $29.50 | $55.64 | $78.45 |
| $20.00 | $39.18 | $55.24 | $30.00 | $56.52 | $79.69 |
| $20.50 | $40.13 | $56.58 | $30.50 | $57.46 | $81.02 |
| $21.00 | $41.09 | $57.94 | $31.00 | $58.40 | $82.34 |
| $21.50 | $41.94 | $59.14 | $31.50 | $59.35 | $83.68 |
| $22.00 | $42.79 | $60.33 | $32.00 | $60.29 | $85.01 |
| $22.50 | $43.65 | $61.55 | $32.50 | $61.23 | $86.33 |
| $23.00 | $44.50 | $62.75 | $33.00 | $62.17 | $87.66 |
| $23.50 | $45.35 | $63.94 | $33.50 | $63.11 | $88.99 |
| $24.00 | $46.20 | $65.14 | $34.00 | $64.06 | $90.32 |
| $24.50 | $46.49 | $65.55 | $34.50 | $65.00 | $91.65 |

Note:   Above pricing does not include time for delays caused by others.

Customer will supply tools, equipment, materials, radios and trackers.

<u>**OT is charged after 40 hours achieved in work week (Monday thru Sunday)**</u>

- Terms: Net 10
- Pricing includes all pre-employment drug testing & background checks, workers comp, all applicable payroll taxes and company provided health care coverage.
- Note: JMS holiday schedule is New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day and Christmas Day